IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEFFREY BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-23-1148-F |
| | ) |
| HALLIBURTON ENERGY | ) |
| SERVICES, INC., | ) |
| | ) |
| Defendant, | ) |
| | ) |

## COMPLAINT

Comes now Plaintiff, Jeffrey Brown, by and through undersigned counsel of Caddell Reynolds, and for his Complaint against, Defendant, Halliburton Energy Services, Inc., states and alleges as follows:

## PARTIES

**1.** Plaintiff, Jeffrey Brown, at all times relevant, was and is a citizen and resident of Crawford County, Arkansas.

2. Defendant, Halliburton Energy Services, Inc., at all times relevant, was and is a Delaware corporation with its principal place of business in Harris County, Texas. Defendant is a foreign for profit corporation licensed to do business in the state of Oklahoma. Defendant can be served through their registered agent, Capitol Document Services, Inc., located at 1833 South Morgan Road, Oklahoma City, OK 73128.

1

3. The incident giving rise to this litigation occurred on a well site in which the Defendant, Halliburton Energy Services, Inc., was conducting fracking operations in Canadian County, Oklahoma.

## JURISDICTION

4. Jurisdiction is proper in this Court as there is complete diversity between the parties, and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00) as required by 28 U.S.C. § 1332

## VENUE

5. Venue in this Court is proper as the incident which gives rise to this cause of action occurred where Defendant was conducting fracking operations in Canadian County, Oklahoma. *See* 28 U.S.C. 1391(b)(2).

## FACTS

5. On or about April 29, 2020, Plaintiff, Jeffrey Brown, was operating a Peterbilt semi-truck and trailer.

6. On or about April 29, 2020, Plaintiff was transporting a sandbox to the well site for Halliburton Energy Services, Inc., to offload for purposes of fracking the subject "Well" in Canadian County, Oklahoma.

7. The sandbox that weighed approximately 40,000 pounds.

8. Plaintiff entered the well site location on April 29, 2020, at approximately 06:00 AM, as a business invitee and/or "transient worker" for the purposes of delivering the contents of his load to Defendant's fracking operations in Canadian County, Oklahoma.

9. Upon arriving at Defendant's fracking operation, Plaintiff brought his semi-truck and trailer to a complete stop thereby exiting the truck and unlocking the sandbox from the flatbed trailer for removal by Defendant's employees.

10. Defendant's agents, employees, and/or representatives maintained a duty imposed by Defendant to warn "transient workers", such as Plaintiff, of known and/or expected hazards on Defendant's premise.

11. Defendant's agents, employees, and/or representatives maintained a duty imposed by Defendant to inform "transient workers", such as Plaintiff, places of safety on Defendant's fracking operations.

12. At no time did Defendant's employees, agents, and/or representatives inform Plaintiff of the hazards known or expected on Defendant's fracking operations.

13. At no time did Defendant's employees, agents, and/or representatives inform Plaintiff of a place of safety on Defendant's fracking operations.

14. Defendant Halliburton required Plaintiff to remain in the truck for removal of the sandbox by Halliburton forklift drivers.

15. Accordingly, Defendant, at all times relevant, had a nondelegable duty to ensure safety of transient workers and/or business invitees such as Plaintiff, pursuant to 29 C.F.R. 1926.16(a).

16. After assessing the contents of Plaintiff's trailer, Defendant, by and through its employees, agents, and/or representatives decided to use a forklift to offload Plaintiff's load.

17. Defendant had a policy in place that all truck drivers shall remain in their respective units during offloading process.

18. Defendant's employees, agents, and/or representatives were aware that Plaintiff's load was mounted to Plaintiff's trailer.

19. Prior to attempting the lift, Defendant's employees, agents, and/or representatives failed to independently inspect to ensure that said load was unlocked from Plaintiff's trailer.

20. Defendant's employees, agents, and/or representatives approached Plaintiff's trailer with a forklift from a perpendicular angle.

21. Defendant's employees, agents, and/or representatives began to attempt the lift with said forklift.

22. Defendant's employees, agents, and/or representatives did so with actual or constructive knowledge that Plaintiff was still in the truck attached to the trailer.

23. As Defendant's employees, agents, and/or representatives attempted to lift the subject sandbox from Plaintiff's trailer, the clamps holding the subject sandbox maintained continuous contact with the trailer.

24. Defendant's employees, agents, and/or representatives failed to see and/or appreciate the risk of the clamps maintaining continuous contact with the trailer.

25. Defendant's employees, agents, and/or representatives proceeded in executing the lift and in so doing caused Plaintiff's tractor and trailer to begin listing to one side until said side was lifted off the ground by several feet.

26. Defendant's employees, agents, and/or representatives knew or should have known that the listing of Plaintiff's tractor and trailer to one side and/or coming off the ground was indicative that of something being wrong, but proceeded with their attempt without regard to their actions.

27. As Defendant's employee, agent, and/or representative continued with the lift, he/she became aware that Plaintiff's tractor and trailer was off the ground.

28. Defendant's employee, agent, and/or representative, suddenly and without warning, released the tractor and trailer from the forklift while said tractor and trailer were off the ground.

29. As a result of Defendant's employee, agent, and/or representative releasing Plaintiff's tractor and trailer in midair, Plaintiff's tractor and trailer slammed into the ground.

30. Consequently, Plaintiff suffered serious personal injuries as a result of Defendant's employees, agents, and/or representatives' actions and/or inactions.

## **NEGLIGENCE OF DEFENDANT HALLIBURTON ENERGY SERVICES, INC.**

### Count I.   Negligence of Defendant

31. Plaintiff incorporates by reference the allegations of the preceding paragraphs of this Complaint as if each were fully set forth herein in their entirety.

32. At the time of the incident, Defendant was responsible for fracking operations.

33. Accordingly, Defendant had a non-delegable duty to Plaintiff, and other similarly situated to Plaintiff, to control and operate the premises/site in a safe manner.

34. These duty(ies), included but was not limited to:

a. Informing Plaintiff of the hazards on Defendant's premises known to Defendant through actual or constructive knowledge;

b. Informing Plaintiff of safe areas on Defendant's premises;

c. Informing Plaintiff that he should not remain in the tractor whilst Defendant's employees, agents, and/or representatives attempted to offload the load on Plaintiff's trailer; and,

d. Terminating the offloading attempt by the forklift as soon as it was obvious the sandbox was not detaching from Plaintiff's trailer.

35. Defendant's actions and/or inactions, by its employees, agents, and/or representatives, in allowing the unsafe operation of the forklift was a breach of the duty owed to Plaintiff, and a violation of 29 C.F.R. 1926.16.

36. Defendant's actions and/or inactions, by its employees, agents, and/or representatives, in failing to warn Plaintiff of the hazards actually and/or constructively known by Defendant on Defendant's fracking operations was a breach of the duty owed to Plaintiff.

37. Defendant's actions and/or inactions, by its employees, agents, and/or representatives, in failing to inform Plaintiff of safe places on Defendant's fracking operation was a breach of the duty owed to Plaintiff.

38. As a direct and proximate cause of Defendant's actions and/or inactions, Plaintiff was injured in an amount that exceeds the $75,000 minimum necessary for diversity jurisdiction.

**Count II.   Negligence of Defendant as Controlling Employer of Forklift Driver and Offloading of Defendant's Sandbox**

39. Plaintiff incorporates by reference the allegations of the preceding paragraphs of this Complaint as if each were fully set forth herein in their entirety.

40. At all times applicable, Defendant was the controlling employer of the fracking operation as defined by CPL 02-0.124.

41. CPL 02-0.124 defines a controlling employer as, "an employer who has general supervisory authority over the worksite, including the power to correct safety and health violations itself or require others to correct them."

42. Accordingly, Defendant, at all times relevant, maintained a duty to Plaintiff and others similarly situated as Plaintiff, to keep the fracking operation free of safety and health violations.

43. Defendant breached its duty as the controlling employer to Plaintiff and others similarly situated as Plaintiff in the following ways:

    a. Failing to have competent employees, agents, and/or representatives operating the forklift;

b. Failing to supervise the operator of the forklift's offloading of Plaintiff's trailer;

c. Failing to timely recognize the danger of the sandbox not becoming disconnected from Plaintiff's trailer while lifting said sandbox; and,

d. Failing to ensure the safe operation of a forklift by Defendant's employee, agent, and/or representative, generally, in violation of 29 C.F.R. 1910.178.

44. As a direct and proximate result of Defendant's breach(es) of duty(ies) owed to Plaintiff, Plaintiff suffered serious personal injuries.

45. These personal injuries have resulted in Plaintiff requiring medical care and are in excess of the $75,000 minimum required for diversity jurisdiction.

**Count III: Negligence of Forklift Driver as Agent, Employee, and/or Representative of Defendant.**

46. Plaintiff incorporates by reference the allegations of the preceding paragraphs of this Complaint as if each were fully set forth herein in their entirety.

47. At all times relevant, the forklift driver was an employee, agent, and/or representative of Defendant, Halliburton Energy Services, Inc.

48. Accordingly, any and all negligence attributable to forklift driver is attributed to Defendant through the Oklahoma laws of agency and/or the doctrine of *respondeat superior*.

49. Forklift driver had a duty to Plaintiff to operate the forklift in a safe and prudent manner as other reasonably situated to him would under the same or similar circumstances.

51.     Forklift driver had a duty, at all times relevant, to adhere to the requirements of 29 C.F.R. 1910.178.

52.     Forklift driver, at all times relevant, was operating in the normal course and scope of his employment with Defendant Halliburton Energy Services, Inc.

53.     Forklift driver breached his duty(ies) to Plaintiff in the following manner:

a. Failing to timely recognize that the sandbox was not lifting free from Plaintiff's trailer;

b. Failing to stop attempting to unload Plaintiff's trailer upon seeing Plaintiff's tractor and trailer list to one side;

c. Failing to stop attempting to unload Plaintiff's trailer upon seeing Plaintiff's tractor and trailer lift off the ground;

d. Failing to prevent the abrupt release of Plaintiff's tractor and trailer whilst in air;

e. Failing to constantly analyze the "plumb position" of the forklift's mast at all times during the attempted load removal; and,

f. Failing to operate the forklift in a prudent and safe manner as others similarly situated would, in violation of 29 CFR 1910.178(o)(1).

54.     As a direct and proximate result of the aforementioned actions and/or inactions by forklift driver, Plaintiff suffered serious physical injuries.

55. Because forklift driver was operating in the normal course and scope of his employment with Defendant Halliburton Energy Services, Inc., at the time of the subject incident, his negligence is imputed to Defendant Halliburton Energy Services, Inc., under the doctrine of *respondeat superior*.

56. The injuries suffered by Plaintiff were all to his detriment and in an amount in excess of the $75,000 minimum required for diversity jurisdiction.

## DAMAGES

57. Plaintiff incorporates by reference the allegations of the preceding paragraphs of this Complaint as if each were fully set forth herein in their entirety.

58. As a direct and proximate cause of the negligence, recklessness, and careless of Defendant, Plaintiff suffered serious personal injuries.

59. These injuries required medical care and treatment in the past to Plaintiff's detriment and are reasonably certain to necessitate future care and treatment.

60. These injuries have caused pain, suffering, and mental anguish to the Plaintiff in the past and are reasonably certain to cause pain, suffering, and mental anguish in the future.

61. These injuries are permanent in nature.

62. These injuries have caused scarring and/or disfigurement.

63. These injuries have caused Plaintiff to lose wages in the past and are reasonably certain to cause Plaintiff to lose wages in the future.

64. These injuries have caused Plaintiff to have a diminished earning capacity.

65. These injuries amount to more than the $75,000 minimum required for diversity jurisdiction.

## JURY TRIAL DEMAND

66. Plaintiff hereby demands a trial by jury on all controverted issues.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Jeffrey Brown, prays for judgment in his favor over and against Defendant Halliburton Energy Services, Inc., in the sum and amount in excess of the minimum amount of $75,000 required for federal court jurisdiction in diversity of citizenship cases; for costs and attorney fees; for pre and post judgment interest; and for all other just and proper relief to which Plaintiff may show itself entitled.

>Respectfully submitted,
>JEFFREY BROWN, *Plaintiff*
>
>By:  */s/ Bill D. Reynolds*
>Bill D. Reynolds, OBA #18903
>CADDELL REYNOLDS, P.A.
>P.O. Box 184
>Fort Smith, AR 72902
>(479) 782-5297-Telephone
>(479) 782-5184-Fax
>breynolds@caddellreynolds.com
>*Attorneys for Plaintiff*